16096

TAYLOR *ET AL.* v. THOMPSON

(48 S. E. (2d) 648)

*Messrs. DuRant, DuRant & Plowden,* of Manning, for Appellants,

*Mr. James Hugh McFaddin,* of Manning, for Respondent,

June 30, 1948.

TAYLOR, J.: The Complaint in this action reads as follows (omitting formal parts):

"That during January, 1946, Plaintiffs and Defendant entered into a share-crop agreement in order to raise crops for profit upon Defendant's land. That according to said agreement, Plaintiffs were to pay or be charged for one-half (½) the fertilizer and furnish all the labor necessary to raise crops, and Defendant was to furnish a home for Plaintiffs, pay for one-half (½) the fertilizer, and furnish the land upon which the crops were to be planted. That it was further agreed that all crops, or the proceeds of sale of crops, were to be divided between Plaintiffs and Defendant so that Plaintiffs would receive one-half (½) and Defendant would receive one-half (½) thereof.

"That Plaintiffs performed their part of said Contract so far as they were allowed to do so by Defendant. That on or about January 12th, 1946, Plaintiffs moved into the home provided by the Defendant for them, and pursuant to, and in reliance upon, said agreement, Plaintiffs planted, cultivated and harvested the crops on Defendant's land, and that Plaintiffs furnished all labor necessary to make said crops, except for extra labor used in cropping and stringing the Tobaco.

"That the cotton crop planted on Defendant's land was a failure, but Plaintiffs are informed and believe that Defendant had insured the said Cotton Crop and that Defendant had collected said Insurance when said crop failed. That during August and September, 1946, the Defendant sold the Tobacco grown on Defendant's land and received the proceeds from said sale; and that Defendant now has on hand other crops raised on his land by the labor of the Plaintiffs.

"That during August and September, Defendant sold all the Tobacco raised on his land and collected the proceeds therefrom, and shortly after selling all Tobacco, Defendant informed Plaintiffs that they were to receive none of the proceeds of sale of crops and none of the crops on hand, and that Defendant had nothing further for Plaintiffs to do. That thereafter Plaintiffs ceased working on Defendant's place and have performed no further labor thereon, but until Defendant repudiated the agreement and stopped them from working, Plaintiffs performed and fulfilled their agreement in every respect.

"That Defendant, in violation of said agreement with Plaintiffs and despite Plaintiffs' requests has refused and refuses to divide with plaintiffs the money received by Defendant from crops. That the Defendant has refused to inform plaintiffs of the amount of money received by Defendant from said crops, but Plaintiffs are informed and believe that Defendant received more than Four Thousand ($4,000.00) Dollars from the sale of Tobacco alone, besides the amount collected from Insurance of cotton and the crops sold or now in possession of Defendant—for all of which Defendant refuses to account.

"That the Plaintiff, Henry Taylor, is indebted to the Defendant in the sum of One Hundred and Sixty ($160.00) Dollars, and Plaintiff, Eddie Tomlin is indebted to the Defendant in the sum of Three Hundred and Ten ($310.00) Dollars, and both Plaintiffs are indebted to Defendant for

one-half (½) the amount expended by Defendant for fertilizer, which amounts are far less than Plaintiffs' shares of the crops and the proceeds of sale of crops.

"Wherefore, Plaintiffs pray:

"1. For an accounting of all crops raised on Defendant's land, proceeds of sale of said crops, insurance benefits due to failure of crops, amounts expended for fertilizer, and all other receipts and disbursements arising out of the above agreement.

"2. For Judgment against the Defendant for one-half (½) of all crops on hand and one-half (½) of all proceeds of sale of crops and proceeds of crop insurance, minus the amounts that Plaintiffs are indebted to Defendant.

"3. For such other and further relief as shall be meet and proper."

The amended answer is as follows (omitting formal parts.)

"That he admits paragraph I.

"That he denies each and every other allegation therein contained except those hereinafter specifically admitted or explained.

"The defendant admits that the plaintiffs agreed to operate a share crop farm for the year 1946 in which the plaintiffs were to furnish all the labor and one-half of the fertilizer, and that the defendant was to furnish the land and one-half of the fertilizer and that the proceeds of the crop would be equally divided after deducting therefrom certain expenses hereinafter stated. That the share farm was to consist of cotton, and tobacco only.

"For a First Defense, the defendant alleges:

"That the plaintiffs breached their part of the contract by failing to furnish the labor necessary to raise and harvest the said crops and the defendant, in order to save his investment, was forced to hire the said labor and to perform

the labor himself and his family and because of said breach on the part of the plaintiffs they are not entitled to one-half of the said proceeds but are entitled to only such portion as is in proportion to the amount of labor they actually performed in connection with the said crops.

"That in violation of the said agreement in paragraph I of the complaint the plaintiffs planted another farm of four and two-tenths (4 2/10) acres of tobacco and other crops on a neighboring farm of Dile Frierson and that the plaintiffs performed the labor on such farm to the neglect of the farm of the defendant.

"That the plaintiffs diverted tobacco plants, tobacco wood, plows, wagons, mules, and other farm equipment from the share farm of the defendant to their individual and separate farm on the land of Dile Frierson all to the detriment and damage of the share farm of the defendant.

"For a Second Defense, the defendant alleges:

"The account of the plaintiffs is as follows:

| | |
|---|---:|
| Fertilizer | $ 228.25 |
| Cotton seed (15 bu.) | 15.00 |
| Labor, transplanter, setting tobacco | 90.00 |
| Tobacco Poison | 20.00 |
| Tobacco thread | 10.00 |
| Labor, harvest tobacco | 187.87 |
| Tobacco tax | 226.90 |
| Hauling tobacco to market | 100.42 |
| Meals furnished laborer | 37.20 |
| Mule feed | 60.00 |
| Fish | 6.00 |
| Cash to Henry Taylor | 160.00 |
| Defendants Labor (Jan. 14 to July 1, 60 days) | 180.00 |
| July 1 to August 31, 45 days | 135.00 |
| Taking off tobacco | 45.00 |

Dile Frierson Farm

| | |
|---|---:|
| Tobacco plants | $ 50.00 |
| Tobacco wood | 48.00 |
| Use of tobacco barn | 60.00 |
| Use of plows, wagon mules, etc. | 75.00 |

Henry Taylor Place

| | |
|---|---:|
| To bank | $ 260.00 |
| Tobacco plants | 34.00 |
| Tobacco tax | 60.00 |
| Total | $2,088.64 |
| One-half (½) tobacco net sales | $2,068.25 |
| One-half cotton insurance | 68.82 |
| Total | $2,137.07 |

"For a Third Defense and Counterclaim, the defendant alleges:

"That the plaintiffs are and were at the times hereinafter mentioned residents of Clarendon County, South Carolina.

"That during January, 1946, the plaintiffs agreed to operate a share crop farm of cotton and tobacco with the defendant for the year of 1946 by which agreement the plaintiffs promised and agreed to supply and furnish all labor necessary for the planting, harvesting and preparing for market of the crops and also to furnish one-half (½) of the fertilizer.

"That the defendant agreed to furnish the land, one-half (½) of the fertilizer, the buildings and the implements necessary for the operation of the share farm.

"That the plaintiffs agreed to at all times be faithful, diligent, and careful in the handling of the property belonging to the defendant which was to be used in the farming operation.

"That while the plaintiffs were operating a tobacco barn under said contract, belonging to and the property of the

defendant, which barn contained tobacco belonging to and the property of the defendant, the plaintiffs negligently, willfully, and carelessly allowed the barn to catch on fire and burn to the ground, completely destroying the said barn and the tobacco it contained, all to the defendant's damage in the sum of one thousand dollars ($1,000.00).

"That the·plaintiffs willfully failed to furnish the necessary labor to harvest the said crops and thus forced the defendant to obtain labor as best he could from other sources, all to the damage to the said crops and to the damage to the defendant in the amounts of money expended for such labor.

"That the plaintiffs worked and farmed other tobacco during the time that they had agreed to work and farm for the defendant, all to the defendant's damage, to his crops by their neglect.

"That the plaintiffs willfully breached their contract by diverting tobacco plants, tobacco wood, plows, wagons, mules, and other farm equipment, together with their labor from the share farm of the plaintiffs and the defendant to their individual and separate farms on the lands known as the Dile Frierson and Henry Taylor lands, all to the detriment and damage of the defendant.

"That all of the aforesaid damage was caused directly and proximately by the plaintiffs and their servants in the following particulars, to wit:

"A. By building a large and excessive fire in the said barn and leaving the same unattended.

"B. By failing to properly watch the said barn to extinguish the fire after it had caught outside of the furnace.

"C. By operating the said barn at this dangerously high temperature, against the direct orders of the defendant.

"D. By failing to perform labor in the defendant's tobacco when told to do so by the defendant.

"E. By working on the private farms of Dile Frierson and Henry Taylor, not within the agreement or contract, to the neglect and detriment of the share farm of the defendant.

"Wherefore, the defendant having fully answered prays that the complaint of the plaintiffs be dismissed and that the defendant have judgment against the plaintiffs for the sum of one thousand dollars ($1,000.00) and the costs of this action."

Plaintiffs served the following reply:

"The plaintiffs above named, by way of Reply:

"Deny each and every allegation in the Counter-Claim of Defendant's Amended Answer, except those hereinafter specifically admitted or explained.

"Plaintiffs admit Paragraph I of said Counter-Claim.

"Plaintiffs admit that there was a share crop agreement between Plaintiffs and Defendant for the year 1946, whereby Plaintiffs agreed to furnish all labor and one-half of the fertilizer necessary; and Defendant was to furnish everything else."

After due notice plaintiffs moved for an order appointing a Special Referee in equity which was denied by the presiding judge in the following order:

"This matter comes before me upon the notice of plaintiffs' attorneys for the appointment of a Special Referee in this action. After consideration of the pleadings and after argument by the attorneys, pro and con, I am of opinion that this is an action for breach of contract in which the parties are entitled to trial by jury. Plaintiffs' motion for a Special Referee in Equity is therefore denied and

"It is so ordered.

"J. Frank Eatmon
"Judge of the Third Judicial Circuit"

Plaintiffs now appeal to this Court from the above order alleging error upon exceptions which raise three questions.

1. Is an action by laborer under share crop contract for accounting and judgment against landlord one in equity?

2. Is an action under share crop contract for accounting and settlement involving evidence as to amount of crops, amount received from sales and amount and value of crops on hand and amounts expended by landlord one involving a long account?

3. Did the presiding judge err in holding that the action was purely legal and that he was powerless to order a reference?

In *Neal v. Suber*, 56 S. C. 298, 33 S. E. 463, 465, this Court said: "It will not be necessary to consider the exceptions *seriatim*, as they practically present but three questions, the first of which is as follows: Is this a case on the law or equity side of the court? The parties to the contract either were partners or joint owners of the crops. If they were partners, the court of equity was the appropriate tribunal for winding up and settling the disputes growing out of the partnership, and, if they were joint owners of the crops, the court of equity was likewise the proper forum in which to see partition thereof. Pom. Eq. Jur., § 1391; Freem. Co-ten, § 426. The case was therefore properly triable by the court, in the exercise of its equitable jurisdiction."

See *Mayfield v. Bessinger*, 87 S. C. 369, 69 S. E. 673.

In *Malcolm Mercantile Co. v. Britt*, 102 S. C. 499, 87 S. E. 143, we find: "The action for claim and delivery should not have been brought, but the plaintiff's remedy was an action on the equity side of the court. He had a plain and ample remedy there. He should have asked for an accounting, and, if necessary, for an injunction and receiver. To hold otherwise would overrule *Neal v. Suber*, 56 S. C. [298], 302, 33 S. E. 463, and *Mayfield v. Bessinger*, 87 S. C. [369], 370, 69 S. E. 673. * * *. A mere

laborer for a share of the crop has no title to any part of said crop until after division is made. The plaintiff is not entitled to the exclusive possession of property sued for, and only in such cases can an action for claim and delivery be maintained. *Clerks Benevolent Union v. Knights of Columbus,* 70 S. C. [543], 547, 50 S. E. 206. The Plaintiff's lien is on the share of the cropper, and a share cropper is not the owner of any particular part of the crop. The landlord owns the whole of the crop, and is entitled to the exclusive possession of the same until after a division is made. While it may prove a hardship in this case, it would be more damaging to affirm the judgment of the circuit court, as by so doing it would overrule several well-considered cases, and the judgment should be reversed."

> From the foregoing decisions of this Court, it is clearly seen that an action for accounting by a sharecropper is equitable in nature.

The pertinent parts of Sec. 653, S. C. Code of Laws 1942 are:

> Where the parties do not consent, the Court may, upon application of either, or its own motion, direct a reference in the following cases, (1) in all equitable actions and of equitable issues in actions at law (2) where the taking of an account shall be necessary for the information of the Court, before judgment, or for carrying a judgment or order in effect.

This Court has consistently held that this section places within the discretion of the trial judge the question of whether or not a reference should be ordered.

This appeal is not grounded upon the premise that the trial judge abused his discretion but rather that he failed to exercise such discretion and committed error in holding in effect that this is an action at law and the statute not applicable.

The case of *Southern Home Ins. Co. v. Hardin,* 146 S. C. 175, 143 S. E. 544, 545, had many features similar to the instant case. It was an action for an accounting, and defendant answered and set up a counterclaim. Plaintiff's attorneys moved for an order of reference which was denied in the following language: "After full argument it appears to me that this is an action at law for the recovery of money and it is not properly triable before a referee, but that the same should be submitted to a jury. Therefore, on motion of defendant's attorneys, it is ordered that the said motion be and hereby is refused."

Upon appeal to this Court the order was reversed and set aside in the following language: "His refusal of the plaintiff's motion for a reference is not based upon the exercise of his discretion but upon the matter of law that the action is 'for the recovery of money and it is not properly triable before a referee, but that the same should be submitted to a jury.' We think that his honor misconstrued the complaint; it is clearly an action against an agent for an accounting. The defendant so recognized it in his demand for an accounting." See also *Witherspoon v. Stogner,* 182 S. C. 413, 189 S. E. 758.

We are of the opinion that this action is equitable in nature and that His Honor should have exercised his discretion in determining whether or not an order of reference should have been granted. The order appealed from is therefore reversed and the case remanded for this purpose.

Reversed.

BAKER, C.J., and FISHBURNE, STUKES and OXNER, JJ., concur.